Anthony D. Prince (SBN # 202892)
General Counsel,
California Homeless Union/Statewide Organizing Council
Law Offices of Anthony D. Prince
2425 Prince Street, Ste. 100
Berkeley, CA 94705
Tel: 510-301-1472

Attorneys for Plaintiffs

# UNITED STATES COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA GILBERT, an individual, on behalf of herself and similarly situated persons; SACRAMENTO HOMELESS UNION, a local of the California Homeless Union/Statewide Organizing Council, on behalf of itself, its members and Jessica Gilbert, a Union member and officer,<br><br>Plaintiffs<br><br>vs.<br><br>SACRAMENTO SELF HELP HOUSING ("SSHH"), a non-profit corporation; JOHN FOLEY, in his official capacity as Executive Director for SSHH; JEREMY BAIRD, in his official capacity as Director of Interim Housing for SSHH; COUNTY OF SACRAMENTO; SACRAMENTO COUNTY DEPARTMENT OF HUMAN ASSISTANCE ("DHA") and DOES 1-10,<br><br>Defendants | Case No.:<br><br>**COMPLAINT FOR CIVIL RIGHTS; VIOLATION OF 42 U.S.C. § 1983; 1st and 14TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES -STATE-CREATED DANGER; CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT ("FEHA"); DECLARATION OF JESSICA GILBERT; DECLARATION OF MAYRA B. PASTORE, PhD; DECLARATION OF CRYSTAL SANCHEZ; DECLARATION OF ANTHONY D. PRINCE; [Proposed] ORDER.** |

## INTRODUCTION

**1.** **Jessica Gilbert**, an unhoused member and officer of the Sacramento Homeless Union who is in the seventh month of a high-risk pregnancy and the **Sacramento Homeless Union** hereby move this Court to issue a temporary restraining order and mandatory injunction requiring Defendant Sacramento Self Help Housing ("SSHH"), a homeless shelter operator, to permit Ms.

*Complaint for Civil Rights*

Gilbert to immediately return to her residence from which she and Joseph Jensen, the father of her unborn child, were wrongfully and without due process "exited" on November 4, 2022.

2. Plaintiffs further pray that the Court restrain SSHH from further efforts to deprive Ms. Gilbert of her housing without due process and for a declaratory judgement finding that the "Immediate Exit" policy of evicting, without due process, alleged violators of SSHH's "House Rules"

3. Ms. Gilbert, a 30-year-old homeless female, is in the seventh month of a high-risk pregnancy. On November 3, 2022, she received an "Immediate Exit Notice" signed by Defendant Jeremy Baird, Director of Interim Housing for SSHH falsely accusing her of violating various "House Rules." On November 4, 2022, she was physically exited, under threat of police action, from her SSHH residence at 5841 Elmo Drive in North Highlands, CA. Although SSHH policy ostensibly provides a process for grieving and appealing adverse actions - "SSHH Grievance Procedure" and "SSHH Client Rights and Responsibilities" – Plaintiff was denied any opportunity to avail herself of these rights before she was removed from her housing.

4. At the time she was "exited," SSHH was well aware that Plaintiff Gilbert had nowhere to go and would immediately be consigned to the streets. As she was forced out of the residence, her SSHH case worker, Brody Guzman, gave her a packet of materials including a list of Sacramento-area homeless shelters none of which, as discussed below, had a single available shelter bed.

5. Plaintiff learned in a text message from her case manager that the decision to eject her had been authorized by Defendant Sacramento County Department of Human Assistance ("DHA"). Declaration of Jessica Gilbert.) That same day, Union attorney Anthony Prince sent a letter via email addressed to SSHH Executive Director John Foley, Program Director Carolyn Thomas and SSHH Director of Interim Housing Jeremy Baird insisting that the "Immediate Exit

*Complaint for Civil Rights*

Notice" be rescinded at least until Ms. Gilbert had an opportunity to grieve and appeal her removal. SSHH did not reply or otherwise respond to counsel's letter.

6. On November 4, 2022, the Union authorized a portion of its limited funds to temporarily place Ms. Gilbert in a local motel. At this time, the funds have been nearly exhausted and, absent intervention by the Court, plaintiff faces imminent return to the streets at the risk of her health and safety as well as that of her unborn child.

7. In this case there is compelling circumstantial evidence that her loss of housing was in significant part based on sex-based discrimination, i.e., on her status as a pregnant woman. In any case, by exiting Plaintiff, knowing that she would become homeless, Defendants deliberately and knowingly disregarded the dramatically increased risks of harm on the streets of Sacramento.

8. Finally, Defendant SSHH's policy and practice of "immediately exiting" residents accused of violating "House Rules" and denying targeted residents recourse to their own appeals written appeals process, violates the right to free speech, to petition the government for redress of grievances and substantive due process rights. Accordingly, Plaintiffs seek a declaratory judgment that the "Immediate Exit" policy, both facially and as-applied, is unconstitutional and cannot be enforced in its present form.

**BACKGROUND AND ESSENTIAL FACTS**

9. Beginning on or about September 6, 2022, Plaintiff Jessica Gilbert, who was five months pregnant and homeless at the time, was placed by the Sacramento Department of Human Assistance ("DHA") into a series of shared shelter homes operated by the Sacramento Self Help Housing, a private 501(c)(3) non-profit corporation which partners with the County of Sacramento through the County's Department of Human Services.

10. She was first placed in the Parker Street Shelter located at 6412 Parkcrest Way in Citrus Heights, California and assigned to case manager Brody Guzman. She remained at this location for only a few days before she was scheduled to move to a second house at 10065 Emerald

*Complaint for Civil Rights*

Grove Drive in Elk Grove which was a family shelter, better suited for an expectant mother. However, while enroute, case worker Guzman called, informing Plaintiff that because the carpets were "not ready" she would instead be placed at 61 De Fir Circle in Sacramento.

11. However, as soon as she moved to the new house, Plaintiff was placed on a "contract" based on alleged issues she had with "Michelle Shra," the house manager at the Elk Grove residence, and informed that had to leave in two days. Concerned, Plaintiff texted case manager Brody Guzman who replied "No, you didn't do anything wrong. Moving has more options." (See, Exhibit C to Declaration of Jessica Gilbert.) Ms. Gilbert was then relocated to 5841 Elmo Drive, North Highlands, a non-family shared house ill-suited for an expectant mother.

12. Throughout her stay at four different SSHH residences, Ms. Gilbert was repeatedly charged with various violations of house rules while her own written complaints regarding other residents and staff were ignored.

13. From September 8, 2022 through October 17, 2022, Ms. Gilbert was served with eleven (11) "House Rules Violation" notices - all but two from staff member Shawn Goodrich – with boxes checked charging twelve relatively minor violations. Five (5) notices charged "Missed curfew," three (3) charged "Has not kept up with house/personal chores," one (1) charged "Excessive noise" with a comment that read, "Client arguing with Joseph Jensen late at night [and] using shower late at night," one (1) charging "Harassment of others/inappropriate behavior" with a comment reading "Client fighting with partner" and "cooking and using the dryer after midnight."

14. Plaintiff was *not* charged with any of the more serious violations for which checkboxes are provided on the "House Rules Violation" form, including "Alcohol/Illegal Drugs/Paraphernalia on Premises," "Weapon on premises," "Smoking indoors," "Taking belongings from others," "Entered unauthorized room," or "Damage to property." See, Gilbert Declaration. Neither did any of the eleven notices charge Plaintiff with "Issue with pet," "not having cat on leash while letting the cat out," "leaving doors unlocked while taking cat out," "taking

*Complaint for Civil Rights*

others[sic] food," "taking showers at night" or "spending a long time in the restroom." However, the November 3, 2022 Immediate Exit Notice charged *every one of these previously unalleged violations.* See, Exh. I to Gilbert Decl. In addition, the Immediate Exit Notice repeatedly used the plural word "clients" In addition, the allegations listed on the Immediate Exit Notice were attributed to the plural "clients" apparently referring to both Ms. Gilbert and her partner Joseph Jensen, also an SSHH resident. In this way, the Notice failed to specifically identify as the violator of any particular charged violation. Plaintiff Gilbert with particularity the specific individual, i.e., whether it was Ms. Gilbert or Mr. Jensen, who actually committed the violations alleged.

15.   As described in his declaration, Union counsel Anthony Prince's efforts to forestall Plaintiff's ejectment were unavailing. Neither SSHH nor DHA ever replied to Prince's letter of November 3, 2022.[1] Accordingly, to prevent Ms. Gilbert from being thrown into the streets, Mr. Prince authorized the use of Union funds to temporarily house Ms. Gilbert in a local hotel. However, as also explained in his declaration, the Union - which receives no income from any source other than modest monthly dues from core members of between $1 and $5 per month  -  has already expended almost $2,000 in hotel bills and cannot now afford to keep Ms. Gilbert housed for more than a few days after which she will have nowhere to go but the streets.

**JURISDICTION AND VENUE**

16.   Jurisdiction exists because this is an action for injunctive relief pursuant to 42 USC Section 1983 and F.R. Civ. P. 23(b)(2) based upon ongoing violations of rights guaranteed by the

---

[1]   However, on November 14, 2022, ten days after the letter was sent and one day after Plaintiffs' counsel notified Defendants that the instant *Ex Parte* application would be filed, plaintiffs' counsel received a telephone call from a Ms. Esmeralda Flanagan who identified herself as a representative of the "Non-Profit Insurance Alliance" which, she stated, serves as insurer and risk assessor for SSHH.
   While claiming that she had only that day learned of the dispute and the *Ex Parte* notice, and appearing unfamiliar with the facts, she nevertheless said that allegations of illegal drug use and theft of credit cards involving Plaintiff Gilbert were contained in notes provided to her by SSHH. Since no such allegations were ever included in any of the charges justifying Plaintiff's Immediate Exit, counsel replied that Defendants appeared to be responding to Plaintiff's impending lawsuit with an attempt to bootstrap false charges of a far more serious nature.

*Complaint for Civil Rights*

First and Fourteenth Amendments to the Constitution of the United States of America and other federal and state statutes including the California Fair Employment and Housing Act which protects homeless shelter occupants from harassment and discrimination, including on the basis of sex and the status of being pregnant.

**PARTIES**

**Plaintiffs**

17. Plaintiff **Jessica Gilbert,** a homeless female in the seventh month of a high-risk pregnancy, who was wrongfully evicted from her residence operated by Defendant Sacramento Self Help Housing. [2]

18. Plaintiff **Sacramento Homeless Union** is a local of the California Homeless Union, an unincorporated membership association which organizes, advocates for and represents unhoused and marginally housed persons.

**Defendants**

19. Defendant **Sacramento Self Help Housing ("SSHH")** is a 501(c)(3) non-profit corporation and homeless shelter operator that is partnered with, collaborates with, receives funds for the provision of temporary housing from the U.S. Dept. of Housing and Urban Development (HUD), the City of Sacramento and Sacramento County and otherwise functions as an agent of the City and County for the provision of such services. See, Declaration of Crystal Sanchez.

---

[2] It is likely that Jessica Gilbert is well-known to Sacramento County and its Department of Human Assistance ("DHA"). In the midst of this summer's extreme heat wave she filed a declaration in the case of *Sacramento Homeless Union, et al. v. County of Sacramento, City of Sacramento, et al*. Case No. 22:22-cv-TLN-KJN. The suit resulted in two consecutive preliminary injunctions halting the removal of unhoused persons from areas shaded by trees and under freeway overpasses. In its order of September 2 2022, the Court Ms. Gilbert's declaration which included a description of what would happen to her if she was forced onto the unprotected streets.

Although upon her entry in the SSHH program, several residents and staff asked her about the lawsuit, the extent to which retaliation based on Ms. Gilbert's participation may have been a factor in Sacramento County's decision to approve her ejectment from SSHH is not known but may be a proper area of discovery in later stages of the litigation.

*Complaint for Civil Rights*

20. Defendant **Department of Human Assistance ("DHA")** is a department of the **County of Sacramento** with capacity to sue and be sued and, which in this case, approved SSHH's decision to exit Plaintiff Gilbert from her housing without providing plaintiff with any meaningful notice or pre-deprivation hearing or requiring **Defendant SSHH** to first follow its own procedures which provide the right of grieving and appealing the loss of any services.

21. Defendant **Jeremy Baird** is Director of Interim Housing at SSHH. He is sued in his official capacity.

22. Defendant **John Foley** is Executive Director of SSHH, sued in his official capacity.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Defendant SSHH is a State Actor and Should Be Held Liable for Deprivation of Plaintiffs' Civil Rights Under 42 U.S.C. § 1983

23. To establish a claim under 42 U.S.C. §1983, a plaintiff must plead a deprivation of a right secured by the Constitution and the laws of the United States that was committed by a person acting under color of state law. *Machon v. Pennsylvania Dept. of Public Welfare*, 847 F.Supp.2d 734 (E.D.Pa. 2012). Where a plaintiff lodges a Section 1983 claim against a private party (as opposed to a governmental entity), the defendant can be held liable where he is "fairly said to be a state actor." *Pugh v. Downs*, 641 F. Supp.2d 468, 472 (E.D.Pa.2009). *See also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982).

24. In this case, Defendant Sacramento County Department of Human Assistance is indisputably a state actor liable to suit for actions under color of law for having approved the immediate exiting of Plaintiff Gilbert. Whether Defendant SSHH, a private party, may be "fairly said to be a state actor" requires the application of one of four possible court tests including the "close nexus" test and the "joint action" test. See, *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)

*Complaint for Civil Rights*

25. In the "close nexus test" the inquiry is whether "there is a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may fairly be treated as that of the state itself" and where "the state "has *provided such significant encouragement, either overt or covert*" that the choice must be deemed to be that of the State. *Id.* (Original italics.)

26. Here, Defendant SSHH, a private actor, *sought and obtained* the official approval of Defendant Sacramento County Department of Human Assistance (DHA) in exiting Plaintiff from her residence. When Plaintiff learned of the decision, Ms. Gilbert texted her case manager Brody Guzman asking whether the County had approved her immediate exit. The reply came from Melody Diaz, who identified herself as a Case Manager II: "It's the DHA who has approved your exit for today." (See, Exhibit J to Gilbert Decl.).

27. Under the "joint action" test, a private party can be fairly said to be a state actor where a private party is a "willful participant in joint action with the State or its agents." (*Lugar v. Edmonson).* Here, when SSHH decided to immediately exit Ms. Gilbert and DHA, in turn, approved the exit that same day, there was joint action by the state and private party SSHH whose participation was obviously willful. Moreover, the relationship between SSHH and DHA involved "the specific conduct of which plaintiff complains." See *Focus On The Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263 (11th Cir. 2003). See also, *Adickes v. S. H. Kress & Co.,* 398 U. S. 152, ("Private persons, jointly engaged with state officials in the prohibited action, are acting under 'color of law'[and] [t]o act `under color' of law does not require that the accused be an officer of the State. *It is enough that he is a willful participant in joint activity with the State or its agents,*" *Adickes,* quoting *United States v. Price,* 383 U.S. at 383 U. S. 794. (Italics in original.)

28. Also instructive for purposes of determining whether Defendant SSHH should be considered a state actor is *Collins v. Womancare,* 878 F.2d 1145, 1154 (9th Cir.1989). In that case, the Court found that a private party had *not* engaged in state action where a state official used

*Complaint for Civil Rights*

independent judgement, rather than the judgement of a private party, in issuing citations to protesters violating a preliminary injunction. The facts here are the inverse of those in *Collins* inasmuch as it was not DHA but private party SSHH which used *its* judgment in *deciding* to immediately exit Plantiff, to which Defendant DHA then gave its approval.

       29.      Here, DHA did *not* use its independent judgment in removing plaintiff Gilbert from her housing; instead it relied and approved "the judgment of a *private party*, i.e., SSHH, which had *already decided* to exit Plaintiff Gilbert. Hence, following the Court's reasoning in *Collins* in the inversed circumstances of the case at bar and applying the joint action test, private party SSHH should be considered a state actor for purposes of "the specific conduct of which plaintiff complains." (*Focus on the Family*).

## PREGNANCY DISCRIMINATION AGAINST PLAINTIFF

**Defendants Harassed and Discriminated Against Jessica Gilbert Based on her Protected Status as a Pregnant Woman**

       50.      The Fair Housing Act, ("FHA") 42 U.S.C. 3601 <u>*et seq*</u>., prohibits discrimination by direct providers of housing, which includes operators of temporary housing such as Sacramento Self-Help Housing, as well as other entities, including counties as political subdivisions and agencies of the state whose discriminatory practices make housing unavailable to persons because of race, color, religion, sex, national origin, familial status or disability. California's Fair Employment and Housing Act ("FEHA") essentially mirrors FHA and extends the prohibition of discrimination and harassment on the same bases to "all shelters, including emergency, overnight and transitional shelters." (Exh. E to Declaration of Crystal Sanchez). FEHA defines "sex" to include pregnancy, childbirth, breastfeeding and medical conditions related to pregnancy, childbirth and breastfeeding.

       51.      In *Department of Housing and Community Affairs v. Inclusive Communities Project*, 135 S.Ct. 2507 (2015) ("*Inclusive Communities*") the Supreme Court held that disparate impact

*Complaint for Civil Rights*

claims are available under the Fair Housing Act so long as plaintiffs identify the "policy or policies" they are challenging (*Id*. at 2523) and connect the challenged policy to the disparate impact on members of a protected class. (Id at 2523-23) and in *Sisemore v. Master Financial, Inc.*, 151 Cal.App.4th 1386 (2007) the Court held that FEHA permits disparate impact claims. Significantly, FEHA's legislative history describes an intent to encompass "an act or failure to act [that] has the effect, *regardless of intent*, of unlawful discrimination." (*Id.* at 1419 (emphasis added).)

52. In this case, Plaintiff Jessica Gilbert alleges that Defendant SSHH violated FEHA as well as the federal Pregnancy Discrimination Act when it repeatedly sanctioned and ultimately exited her from her residence for "violations" of House Rules that directly or indirectly implicated her status of being seven months pregnant. In responding to allegations regarding missed curfew, failing to perform chores, spending "too much" time in the bathroom, taking showers and preparing food at night, etc., Plaintiff, as detailed in her declaration, repeatedly explained via text messages her difficulties with strict compliance with certain house rules that were impacted by her pregnancy.

53. For example, on one the occasion when she missed curfew—and then only by a few minutes – she had already informed her case manager via email that she had gone to the Kaiser Hospital ER for a pregnancy-related issue. (See, Gilbert Declaration). On another occasion when she was a few minutes late, she explained that she had to wait in a long line at a local fast-food restaurant after feeling hungry at night, something not atypical for pregnant women.  (See Ex. E to Gilbert Declaration)

54. Indeed, it was or should have been obvious to SSHH staff that physical limitations related to her pregnancy were making it difficult for her to perform chores or bend down to attach or remove her cat's leash or were linked to "spending too much time in the bathroom" or "taking a shower" or "cooking something at night" or missing curfew because of a late-night hunger pang. The disregard of the obvious strains and physiological impacts on a woman in the latter stages of pregnancy are circumstantially but compellingly suggested here.  Whether or not intentional, the

*Complaint for Civil Rights*

alleged violations which became part of the basis of her immediate exit constituted disparate treatment and discriminatory enforcement.

### III. The Homeless Union Is Harmed By Plaintiff Gilbert's Wrongful Exit

55. Organizational plaintiffs have long been permitted to challenge discriminatory practices and often are at the forefront of enforcement efforts. Such organizational claims were upheld by the Supreme Court in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) to the extent that organizations can show that the alleged discriminatory practices harm their operations by forcing them to divert resources to investigate and counteract the discriminatory conduct and by frustrating the organization's work in furtherance of its mission.

56. Here, Plaintiff Sacramento Homeless Union, affiliated with the California Homeless Union, is an unincorporated membership association which organizes, advocates for and represents unhoused and marginally housed persons which employs no paid staff, receives no grants and has no source of income outside of nominal membership dues. Although it has thousands of members, many cannot afford to pay dues and those who do pay no more than one dollar or five dollars a month. Over the years, what few funds have been available have been largely expended on court filing fees, since the majority of cases seek immediate injunctive relief where quickly obtaining and filing fee waivers is extremely difficult. Funds have also been expended on direct material assistance to the homeless including at the height of the COVID-19 pandemic and more recently during this summer's historic extreme heat wave.

57. Because of Defendants' actions, SHU's work has been substantially disrupted and its limited resources diverted by: 1) spending funds to keep Ms. Gilbert in a hotel room; 2) using time and diverting attention and resources normally allocated to its ongoing mission of organizing, providing direct material support and advocacy on behalf of the unhoused; 3) forcing its legal counsel to set aside other important work to prepare and file this application; and 4) because she is a

*Complaint for Civil Rights*

leading and valuable member and officer of the Union, interrupting and interfering with Plaintiff Gilbert's ability to carry out her normal Union duties. (See, Prince and Sanchez Declarations

# FIRST CAUSE OF ACTION

**Right to Substantive Due Process: State-Created Danger (Fourteenth Amendments to the U.S. Constitution; 42 U.S.C. § 1983)**

58. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

59. Plaintiff is entitled to substantive due process guaranteed under the 14th Amendment of the U.S. Constitution which protects bodily integrity as well as the California Fair Employment and Housing Act ("FEHA"), the federal Fair Housing Act, both of which prohibit discrimination and harassment of homeless shelter residents on the basis of sex and pregnancy.

60. Defendants discriminatorily enforced rules and made false allegations against Plaintiff Gilbert that were sex-based insofar as she is a 7-months pregnant woman contending with the challenges and difficulties normally associated with her condition. In addition, Defendants denied Plaintiff access to SSHH's own stated grievance and appeals process.

60. By forcibly removing Plaintiff from her residence, SSHH knowingly placed Plaintiff Gilbert in immediate danger to her health and safety by exposing her to the well-known dangers of the streets, including exposure to the elements, to physical assault, sexual assault and other harms by violating her right to bodily integrity guaranteed by the 14th Amendment to the U.S. Constitution.

# SECOND CAUSE OF ACTION

**Right to Due Process of Law: State-Created Danger (Article I, Section 7 of the California Constitution)**

61. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

*Complaint for Civil Rights*

Page | - 12 -

62. By wrongfully exiting Plaintiff from her residence, Defendants knowingly rendered her to the streets where she faces a severely increased risk of harm of exposure to the elements, Plaintiffs will be placed in immediate danger to their health and safety by exposing them to the elements, depriving them of their rights to substantive due process guaranteed by Article I, Section 7 of the California Constitution.

### THIRD CAUSE OF ACTION

**Discrimination Based on Sex and Familial Status (Pregnancy):
Hostile Environment Harassment
(California Fair Employment and Housing Act ("FEHA"), Cal.Gov't § 12955 et seq.; Cal.
Code Regs. Tit.2, §12120(a)(2))**

63. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

64. California's Fair Employment and Housing Act prohibits all providers of housing accommodation - including homeless shelters – from harassing or discriminating against any person because of the person's sex, gender, gender identity, gender expression, sexual orientation, familial status or marital status, including discrimination and harassment on the basis of pregnancy. Providers of housing accommodations have a duty not just to refrain from engaging in these unlawful practices, but also to ensure that their staff and other residents do not engage in them or create a hostile environment.

65. Defendants "exited" Plaintiff Gilbert, in part, for "spending a long time in the restroom" and "using the shower late at night" as well as not "keeping up" with "house/personal chores." (See, Declaration of Jessica Gilbert.) In some cases, these allegations were simply untrue; in other cases they reflected physical limitations and the effects of being in the third trimester of pregnancy. On one occasion Ms. Gilbert was charged with "missed curfew" when she had to go to Kaiser Hospital for a pregnancy-related issue. (See, Declaration of Jessica Gilbert.)

*Complaint for Civil Rights*

66. Defendants' continual harassment and undeserved write-ups for "House Rules violations" constituted disparate treatment of Ms. Gilbert based in significant part on her status as a pregnant woman and created a hostile, intimidating offensive and oppressive environment.

**FOURTH CAUSE OF ACTION**

**Discrimination and Harassment Based on Sex and Familial Status (Pregnancy)**
**(Cal. Gov't Code § 11135)**

67. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

68. Government Code § 11135 prohibits any program or activity that receives any financial assistance from the State, either directly or via city or county agencies from engaging in harassment or discrimination. Defendant SSHH receives funding from both the County and City of Sacramento, both of which, in turn are recipients of homeless service funds from the state of California. (See, Ex.B to Sanchez Declaration)

**FIFTH CAUSE OF ACTION**

**Right to Due Process of Law**
**(Article I, Section 7 of the California Constitution)**

69. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set herein.

70. Plaintiff is entitled to the protection of the California Fair Employment and Housing Act ("FEHA"), the federal Fair Housing Act and Amended Americans with Disabilities and the Rehabilitation Act which prohibit discrimination and harassment of homeless shelter residents on the basis of sex and disability. As justification for exiting Plaintiff from her residence, Defendants included allegations that the 7-months pregnant woman was "spending too much time in the bathroom" and had violated curfew when Plaintiff was in the emergency room for a pregnancy-related issue. In addition, Defendants denied Plaintiff access to SSHH's own stated grievance and appeals process.

*Complaint for Civil Rights*

## SIXTH CAUSE OF ACTION

**Right to Free Speech and Petition the Government for Redress of Grievances**
**(First Amendment to the Constitution of the United States.)**

71. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

72. The right of free speech and to petition the government for a redress of grievances is enshrined in the First Amendment the United States Constitution. Prior to exiting Plaintiff Gilbert, Defendant SSHH ignored and suppressed Plaintiff's complaints and written grievances regarding conduct of other residents and staff. By exiting her from her housing before she was given the opportunity to grieve and appeal the decision, Defendant SSHH, a state actor under the "joint action" and "close nexus" tests, denied Plaintiff her right to free speech and to petition the government for a redress of grievances.

## SEVENTH CAUSE OF ACTION

**Right to Pursue and Obtain Safety**
**(Article I, Section I of the Constitution of the State of California)**

73. Plaintiffs incorporate each and every allegation of the preceding paragraphs as if fully set forth herein.

74. Article 1, Section 1 of the California Constitution states; "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, *and pursuing **and obtaining** safety, happiness, and privacy.*" (Emphasis added.)

75. By wrongfully immediately exiting Plaintiff Jessica Gilbert, without due process, from the safe, indoor housing she had obtained, Defendants rendered her homeless and at risk of harm to herself and her unborn child and thereby violated her constitutional right to **pursue** *and obtain* **safety.**

## JURY DEMANDED

*Complaint for Civil Rights*

**PRAYER FOR RELIEF**

76. Plaintiffs respectfully request that this Court:

3. Declare SSHH's "Immediate Exit" policy in its present form to be unconstitutional and except in cases of immediate, substantial and serious risks of harm to persons or property temporarily restrain its enforcement pending a hearing on its constitutionality.

4. Award reasonable attorney's fees.

5. Retain jurisdiction in this matter.

6. Award any further relief the Court deems appropriate.

Dated: November 17, 2022.                          Respectfully Submitted,

                                                   /s/ *Anthony D. Prince*
                                                   Anthony D. Prince,
                                                   Attorney for Plaintiffs

**VERIFICATION**

I, Crystal Sanchez, in my official capacity as President of the Sacramento Homeless Union, declare the following:

The facts alleged in this *Ex Parte* Application are true of my own knowledge except as to those made upon information and belief and, as to such statements, I believe them to be true.

Sworn under penalty of perjury under the laws of the United States of America.

Dated: November 13, 2022                                    /s/ Crystal Sanchez

Executed at Sacramento, California

**VERIFICATION**

I, Jessica Gilbert, declare the following:

The facts alleged in this Ex Parte application are true of my own knowledge except as to those made upon information and belief and, as to such statements, I believe them to be true.

*Complaint for Civil Rights*

Page | - 16 -

Sworn under penalty of perjury under the laws of the United States of America.

Dated: November 13, 2022 /s/Jessica Gilbert

Executed at North Highlands, California

*Complaint for Civil Rights*